**Forrest Haven SPADE,**

v.

**The CHESAPEAKE & OHIO RAILWAY COMPANY, a Virginia Corporation.**

**Civ. A. No. 70-108-N.**

United States District Court,
D. Maryland.

March 16, 1971.

George Molnar, Silver Spring, Md., for plaintiff.

S. R. Prince, Joseph B. Geyer and Albert W. Laisy, Baltimore, Md., for defendant.

NORTHROP, Chief Judge.

This case is here on defendant's motion pursuant to Rules 52 and 59 for an amendment of findings and judgment and Rule 60 for relief from judgment. Argument was heard on both plaintiff's and defendant's motions for summary

judgment on September 3, 1970, with a decision filed, granting plaintiff's motion on September 28, 1970. Pursuant to timely motions, this case was set in and reargued on February 3, 1971. For reasons set out more fully below, this court vacates and reverses its earlier decision and grants defendant's motion for summary judgment.

As an initial proposition, this court questions without deciding whether this case is properly presented before it. Under 45 U.S.C. § 153 First (q) (Supp. 1970), the procedure for reviewing an order of the Railroad Adjustment Board is outlined: After a petition is filed with the court, specifically stating that petitioners seek a review of a final order of the Railroad Adjustment Board, "[a] copy of the petition shall be * * * transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action." Since plaintiff did not allege in his complaint that he was seeking a review of an NRAB decision, this court was without benefit of a transcript of the proceedings that were before the Board. Therefore, if this court were to review the Board's proceedings, it would be necessary to have an amendment made to the complaint and a record of the proceedings before the Board placed before this court. This court feels, however, that such a step is not necessary. The question and issue of law presented for decision can be decided without the aid of such a transcript.

The relevant facts briefly stated are as follows: Plaintiff, a brakeman for defendant, was discharged from the defendant's employ on August 17, 1965, for allegedly failing to report for a "pool assignment." Subsequent to his discharge, plaintiff appealed his dismissal to the National Railroad Adjustment Board for reinstatement and back pay for his alleged arbitrary and capricious dismissal. This action was pursuant to Section 3, First of the Railway Labor Act, which confers upon the Board jurisdiction over all disputes between carriers and their employees "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * *." 45 U.S.C. § 153, First (i). In an order dated August 5, 1968, the Board upheld the railroad's authority to discipline the plaintiff but stated that "we find that the punishment was indeed arbitrary and excessive and should be mitigated by this Board." The defendant was ordered to reinstate the plaintiff by September 5, 1968, with his seniority rights unimpaired, but without compensation for the time lost. Plaintiff claims as a result of this denial to award back pay, his constitutional rights as guaranteed by the fifth and fourteenth amendments have been violated. He therefore instituted this suit for compensation for all time lost from August 17, 1965 until the order for reinstatement on August 5, 1968.

Plaintiff relies upon Rule 70 of the collective bargaining agreement between the railroad and the Order of Railway Conductors and Brakemen, plaintiff's union. Under that rule, an employee could only be discharged after a proper investigation at which time he would be afforded the right to have a representative of his choosing. If after such a hearing a judgment should be entered in his favor, then the discharged employee "shall be compensated for all wage loss suffered by him, if any, less the amount of earnings during period held out of service * * *"

As stated above, there is a serious question whether this case is properly presented here for review. For purposes of argument, however, this court will assume there is no jurisdictional challenge. Under 45 U.S.C. § 153 First (q) (Supp.1970), the findings of the Board "shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure * * * of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction,

or for fraud or corruption by a member of the division making the order."

■ The jurisdiction of a court in reviewing a Board's decision is narrowly circumscribed. Congress, in enacting the Railway Labor Act, "intended to leave a minimum responsibility to the courts." Order of Ry. Conductors v. Pitney, 326 U.S. 561, 566, 66 S.Ct. 322, 324, 90 L.Ed. 318 (1946). On review a district court cannot sit as a trial de novo. Barrett v. Manufacturers Ry. Co., 254 F.Supp. 376 (E.D.Mo.1966). The Supreme Court has stated that "[t]his Court time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board." Gunther v. San Diego & Ariz. E. Ry. Co., 382 U.S. 257, 263, 86 S.Ct. 368, 372, 15 L.Ed.2d 308 (1965). Minor disputes have been defined by statute and case law as disputes arising out of the application or interpretation of existing agreements in relation to the attempted exercise of allegedly existing rights. Elgin, Joliet & E. Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945); Illinois Cent. R. R. Co. v. Brotherhood of R. R. Trainmen, 398 F. 2d 973 (7th Cir. 1968). In Union Pac. R. R. Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959), the Court discussed the legislative history of the Act at length and pointed out that it "was designed for effective and final decision of grievances which arise daily" and that its "statutory scheme cannot realistically be squared with the contention that Congress did not purpose to foreclose litigation in the courts over grievances submitted to and disposed of by the Board * * *." *Id.* at 616, 79 S.Ct. at 1359.

■ *Gunther, supra,* laid to rest the proposition that a decision by the Board should not have final and binding authority. Decisions from the Adjustment Board are to be considered in the same light as decisions from a compulsory arbitrator, Brotherhood of Locomotive Eng'rs v. Louisville & Nashville R. R.,

373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963), and as such, rules applicable to review of an arbitrator's decision are to be applied to review of a Board's decision. Ever since the *Steelworkers Trilogy,* it has been settled law that a decision by an arbitrator will not be set aside unless the arbitrator clearly went beyond the scope of his authority. *E.g.,* United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Textile Workers Union, etc. v. American Thread Co., 291 F.2d 894 (4th Cir. 1961); Lusk v. Eastern Prods. Corp., 74 LRRM 2592 (D. Md. 1969). Likewise a federal court may not review an NRAB award on its merits unless it is found to be wholly baseless and completely without reason. *Gunther, supra.*

The Board did not find that the plaintiff had been disciplined unreasonably but rather that the punishment given was excessive. The Board felt bound by the record made at the plaintiff's disciplinary hearing. In the Board's award, it stated that

> in determining whether the punishment involved herein is arbitrary and excessive, we must assume that the record made at the investigation is the true and complete evidence for consideration. Assuming that everything happened just as the carrier suggests and assuming that the undenied contentions of the organization concerning disposition of comparable cases is true, we find that the punishment was indeed arbitrary and excessive and should be mitigated by this Board.

■ This court is not therefore called upon to determine whether the plaintiff should have been disciplined, but rather whether the Board acted outside the scope of its authority when it mitigated the railroad's punishment and ordered

reinstatement without a corresponding award of back compensation.

Plaintiff contends that the Board went beyond the scope of its authority in granting the plaintiff's request for reinstatement but denying his claim for back compensation. Such a denial it is contended is unreasonable, arbitrary and capricious and as such, a denial of plaintiff's constitutional rights. The plaintiff maintains that Rule 70 leaves the Board with only a narrow choice—reinstatement with full back pay or no relief at all—and that the Board exceeded its authority in ordering a reinstatement without also awarding full back pay. This rigid interpretation of the Board's scope of authority is not warranted and would be acceptable only if the bargaining agreement expressly forbade the Board to exercise any discretion in fashioning its award. Railway Clerks v. Universal Carloading, 72 LRRM 2798 (D. Cal.1969). In general, courts favor a broad discretion in the arbitrator in fashioning an award:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361 (1960).

As was stated by Judge Sobeloff in Lynchburg Foundry Co., etc. v. United Steelworkers of America, 404 F.2d 259 (4th Cir. 1968):

> The question of contract interpretation here is whether reinstatement with full pay represents the sole remedy for an employee who has suffered an injustice, or whether it merely marks the outer limits within which an arbitrator may fashion a remedy appropriate to the circumstances. In the absence of language evidencing a

clear intent to deny the arbitrator any latitude of judgment, the arbitrator is the one to answer this question. *Id.* at 261.

This court recognizes the wide degree of discretion vested in the Board to fashion remedies in each case it is called upon to decide. If this were not so, the duties and functions bestowed upon it by Congress would be sharply curtailed. As stated in *Union Pac., supra,* the legislative history of the Act showed that Congress wanted the Board to be the final arbiter of all minor disputes arising out of contract interpretations and applications. This court is not concerned here with whether the plaintiff should have been disciplined, but whether the Board exceeded its authority when it mitigated the railroad's discipline by ordering reinstatement but did not correspondingly order the payment of back compensation. Absent a specific provision in the collective bargaining agreement limiting the Board's authority in fashioning remedies, this court feels bound by the Board's decision. Therefore, this court vacates and reverses our earlier decision and grants defendant's motion for summary judgment.