NEWARK WIRE CLOTH COMPANY,
a New Jersey Corporation, Plaintiff,

v.

UNITED STEELWORKERS OF
AMERICA, Defendant.

Civ. A. No. 1100–70.

United States District Court,
D. New Jersey.

March 23, 1972.

Apruzzese & McDermott by Frank X. McDermott, Springfield, N. J., for plaintiff.

Rothbard, Harris & Oxfeld by Abraham L. Friedman, Newark, N. J., for defendant.

## MEMORANDUM OPINION

LACEY, District Judge:

Plaintiff Newark Wire Cloth Company (Company) sues to modify, by vacating a part thereof, a May 8, 1970, arbitration award in favor of the defendant United Steelworkers of America (Union), an award which the Union, by its counterclaim herein, seeks to confirm in its entirety. Suit was commenced in state court with removal thereafter by the Union. 28 U.S.C. § 1441. Jurisdiction lies under 29 U.S.C. § 185.

It having been determined at pre-trial conference that there was between the parties no genuine issue as to a material fact, they thereafter filed cross motions for summary judgment. For the reasons hereinafter set forth, the plaintiff's motion is denied and the defendant's motion is granted.

The following facts are not in dispute. The parties entered into a collective bargaining agreement (Agreement), dated December 16, 1969, to expire September 30, 1972. This Agreement (Article VII) contains a grievance procedure for the resolution of differences arising between the parties "as to the meaning, compliance with or application of the provisions of" the Agreement. Should the grievance go unresolved through the first three steps of the grievance procedure, the last step establishes binding arbitration. Limitations upon the arbi-

trator's authority are detailed in the same Article:

> The Arbitrator shall be limited to Grievances arising under this Agreement and to ruling on the interpretation, application or compliance with the provisions of the Agreement. He shall have no power to add to, subtract from or modify any of the provisions of this Agreement, nor to rule on proposals, to amend, modify, extend or renew this Agreement. The award of the Arbitrator rendered under the provisions of this Agreement shall be final and binding upon the Company, the Union and any employee involved.

On February 10, 1970, a Company employee filed a grievance alleging a Company violation of the Agreement. Duly processed through the first three steps, the grievance remained unresolved; and arbitration ensued on the following stipulated submission, dated April 23, 1970:

> Did the Company violate the existing agreement between the parties by the hiring of part-time employees and paying them four (4) hours pay? If so, should the Company discontinue the practice of hiring part-time employees and should they receive eight (8) hours pay.

On May 8, 1970, the Arbitrator issued his decision:

> The undersigned Arbitrator having duly heard the proofs and allegations of the parties, having read the Company brief, reviewed the contract language, and pondered the implications thereof, hereby make (sic) the following AWARD:
>
> 1. The Company in unilaterally establishing a four (4) hour shift violated the specific eight (8) hour shift agreement of the parties.
>
> 2. The Company should forthwith discontinue the practice of hiring and/or utilizing part time employees, unless and until they are able to work out a mutually acceptable agreement with the Union which would permit same.
>
> 3. Since this unilateral action by the Company was in derogation of the contract rights of all the employees, the Company shall forthwith calculate the value of the four hours straight time earnings and shall put the total sum into a fund to be used for a mutually agreed upon benefit for all employees of the bargaining unit. (paragraph numbers supplied).

There is no issue as to paragraphs 1 and 2 of the award. It is as to paragraph 3 thereof, the remedy portion, that the parties are at odds. The Union urges its confirmation. The Company seeks to vacate it, on the tendered ground that the remedy thus granted was beyond the authority conferred upon the arbitrator by the submission agreement. *See* Textile Workers Union of America v. American Thread Co., 291 F.2d 894 (4 Cir. 1961).

Although this action originated in state court, "the substantive law to apply in suits under § 301(a) [29 U.S.C. § 185] is federal law, which the courts must fashion from the policy of our national labor laws." Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). Guidance for the approach courts are to follow in disputes arising under labor contracts containing arbitration clauses is found in the Steelworkers Trilogy: United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) (American); United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (Warrior & Gulf); and United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (Enterprise). In the latter decision the Supreme Court delineated the guidelines for arbitration (at 597, 80 S.Ct. at 1361):

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in or-

der to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies. There is a need for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.* Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity from this obligation, courts have no choice but to refuse enforcement of the award. (emphasis supplied)

The scope and limits of judicial review of an arbitrator's interpretation of a collective bargaining agreement are as defined in *Enterprise* (at 599, 80 S. Ct. at 1362):

> It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

On the other hand, should an arbitrator exceed his authority, "courts have no choice but to refuse enforcement of the award." *Enterprise*, at 597, 80 S.Ct. at 1361. *See also*, Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1126 (3 Cir. 1969).

From the Trilogy opinions several other principles emerge. The merits of a controversy may not be looked to by a court for the purpose of declaring that a correct legal interpretation of the collective bargaining agreement would not support the construction sought. This may be done neither directly nor under the guise of determining that the matter is outside the agreement to arbitrate. It is said that "ac-

ceptance of [any such] view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final." *Enterprise*, 363 U.S. at 598–599, 80 S.Ct. at 1361. It follows that when ". . . the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under the regime is entrusted to the arbitration tribunal." *American*, 363 U.S. at 569, 80 S.Ct. at 1347. Similarly, as to the scope and breadth to be accorded the arbitration clause itself, the intention to exclude must be clearly expressed:

> In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . . Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator. *Warrior & Gulf*, 363 U.S. at 584–585, 80 S.Ct. at 1354.

The Trilogy doctrine, according generous construction to the arbitration clause of a collective bargaining agreement, has found frequent expression in this Circuit and elsewhere. Among the leading cases thereon are Ludwig Honold Mfg. Co. v. Fletcher, *supra;* Tobacco Workers International Union, Local 317 v. Lorillard Corp., 448 F.2d 949 (4 Cir. 1971); Lynchburg Foundry Company v. United Steelworkers of America, Local 2556, 404 F.2d 259 (4 Cir. 1968); Yellow Cab Co. v. Democratic Union Organ-

izing Committee, Local 777, 398 F.2d 735 (7 Cir. 1968), cert. denied, 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969); Lodge No. 12, District No. 37, Int'l Ass'n of Machinists v. Cameron Iron Works, Inc., 292 F.2d 112 (5 Cir. 1961), cert. denied, 368 U.S. 926, 82 S. Ct. 361, 7 L.Ed.2d 190 (1961); Shahmoon Ind. Inc. v. United Steelworkers of America, 263 F.Supp. 10 (D.N.J.1966).

Lynchburg Foundry Company v. United Steelworkers of America, Local 2556, *supra,* is of particular significance. There, as here, the employer resisted an arbitration award, claiming that the remedy portion thereof exceeded the authority granted the arbitrator by the collective bargaining agreement. The District Court had agreed, but the Court of Appeals reversed, reiterated the doctrine of judicial restraint pronounced by *Enterprise,* and stated forcefully the broad discretion, inherent in the arbitration process, in an arbitrator to fashion a fair, appropriate, and imaginative remedy, absent, of course, " . . . language evidencing a clear intent to deny the arbitrator any latitude of judgment . . . ." (404 F.2d at 261).

Lodge No. 12, District No. 37, Int'l Ass'n of Machinists v. Cameron Iron Works, Inc., *supra,* also adopted the *Enterprise* doctrine and accorded the arbitrator "great latitude" in fashioning an appropriate remedy. 292 F.2d at 119. The Court relied largely upon the *Enterprise* rule (363 U.S. at 597, 80 S. Ct. at 1361) that the arbitrator's "informed judgment" is to be utilized and given broad sway "especially . . . [in] formulating remedies. There the need is for flexibility in meeting a wide variety of situations." *See also,* Tobacco Workers International Union, Local 317 v. Lorillard Corp., *supra; cf.* Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777, *supra.*

■ All of the foregoing principles related to the limited judicial review permitted of an arbitrator's determination, and the broad scope of the arbitrator's discretion in acting under a collective bargaining agreement's arbitration provisions, are expounded upon in Ludwig Honold Mfg. Co. v. Fletcher, *supra.* As Judge Aldisert, writing for the Court, there pointed out, the *Enterprise* case "elevated the arbitrator to an exalted status—emphasizing that there would be no interference with his award simply because a reviewing court differed with him in its interpretation of the provisions of the contract. At the same time, it held a checkrein on him—confining his zone of action to the four corners of the collective bargaining agreement." (405 F.2d at 1126).

Drawing upon pertinent determinations by the National Labor Relations Board, decisions under the Federal Arbitration Act (9 U.S.C. § 1 et seq.), and even appropriate state determinations, Judge Aldisert concluded that "only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." (405 F.2d at 1128). Thereafter, dealing with facts which concededly do not match those in the case at bar, in sustaining the award of the arbitrator, Judge Aldisert stated (405 F.2d at 1133): "[W]e cannot say that his award flies in the face of any rational interpretation of the collective bargaining agreement, viewed in the light of the criteria we have discussed heretofore in detail. Accordingly, we hold that judicial interference with the arbitrator's award was not proper." The judgment of the district court, which had vacated the arbitrator's award, was vacated and judgment was entered in favor of the employee.

We find most persuasive the well-reasoned and incisive opinion of Chief Judge Augelli of this District in Shahmoon Ind. Inc. v. United Steelworkers of America, *supra,* holding that an arbitrator's decision and award had not exceeded his authority under a submission agreement (actually a statement of grievance). Referring to decisions hereinabove cited, Judge Augelli summarized

their principles as follows (263 F.Supp. at 16):

. . . [I]t is only when the arbitrator clearly goes beyond the scope of the submission that the courts will interfere. Every presumption is in favor of the award's validity, and the person challenging the award has the burden of showing that the arbitrator exceeded his authority. . . .

Dealing with a contention that the grievance terms should be strictly construed, and that, thus construed, they had been exceeded by the arbitrator, Judge Augelli stated that ". . . grievances submitted to arbitration need not be couched in language comparable to that used in formal court proceedings. . . .".

■ Turning now to the case at bar, in the light of the foregoing principles it cannot be said that the monetary award made by the arbitrator was clearly beyond the scope of the submission. Ludwig Honold Mfg. Co. v. Fletcher, *supra*. This Court finds that the presumption that does exist in favor of the validity of the arbitrator's award has not been overcome by the Company. The Company, having challenged the award, had the burden of showing that the arbitrator had exceeded his authority. That burden has not been discharged.

Moreover, the difficulty with the Company's position is that, given its construction, we would be faced with a determination that there had been a breach of contract for which the Company would not have to reimburse the employees who had sustained loss through the breach. This flies in the face of justice and equity. *Cf.* Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 66 S. Ct. 574, 90 L.Ed. 652 (1946); Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562–563, 51 S. Ct. 248, 75 L.Ed. 544 (1931).

It also is not without significance that the challenged award made by the arbitrator is clearly within the scope of the parties' collective bargaining agreement; and the Company does not contend to the contrary. Since this is so, had there been discussion between the Union and the Company concerning whether or not the submission agreement should include a provision that allowed the arbitrator to act as he ultimately did with respect to the disputed portion of his award, and had the Company refused to arbitrate as to the remedy, it is without doubt that the Union could have come to this Court to have the submission agreement stated by this Court. *See* Socony Vacuum Tanker Men's Ass'n v. Socony Mobil Oil Co., 369 F.2d 480, 482–483 (2 Cir. 1966). Indeed, even now, were we to accept the Company's contention on the disputed portion of the award, it might well be within the collective bargaining agreement for the Union to return to a consideration of the matter of remedy and, failing agreement by the Company to a submission which would contemplate a disposition on such matter by arbitration, the Union could then return to this Court in an appropriate proceeding.

Accordingly, the motion by the Company for summary judgment is denied and the motion by the Union for summary judgment is granted, with costs.

An appropriate order should be sumitted.