**PETER COOPER CORPORATIONS,**
U. S. Glue & Gelatin Division,
Plaintiff,

v.

**UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA,
LOCAL 1132, Defendant.**

No. 78–C–327.

United States District Court,
E. D. Wisconsin.

June 7, 1979.

Michael S. McCauley, Quarles & Brady, Milwaukee, Wis., for plaintiff.

Alvin R. Ugent, Podell & Ugent, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Plaintiff, Peter Cooper Corporations, U. S. Glue & Gelatin Division (Company) commenced this action on May 24, 1978, to vacate a portion of an arbitration award which directed that the Company pay backpay to an employee represented by the defendant, United Electrical, Radio and Machine Workers of America, Local 1132 (Union). The action was brought pursuant to section 301 of the Labor Management Relations Act (the Act), 29 U.S.C. § 185. Jurisdiction is grounded on 28 U.S.C. § 1337.

Cross-motions for summary judgment are presently pending before the Court. This memorandum and order will address these motions.

A review of the facts shows that on February 24, 1977, Pedro Martinez, Jr. was discharged by his employer, Peter Cooper Corporations, for alleged fighting. The Union, on behalf of Martinez, challenged the discharge by invoking the grievance procedure of the collective bargaining agreement (the Agreement) which was in effect between the Company and the Union from August 1, 1976 through July 31, 1978.

Section 7.02 of the Agreement sets forth a four-step grievance procedure which culminates in arbitration upon the request of either the Company or the Union. This fourth step provides:

In the event that no decision is reached in the three previous steps, then the matter

may be referred by either party to an impartial umpire to be appointed by the Wisconsin Employment Relations Commission from its staff or from the commission itself. A decision of the umpire shall be final. Unless either party requests arbitration within sixty days from the time that the third step was or could have been initiated, the grievance shall be considered settled and it shall not be carried beyond the third step.

Section 7.03 of the Agreement authorizes the umpire to interpret and apply the Agreement in case of misunderstanding or dispute as to the meaning or application of the Agreement. This section states that the umpire has no authority to add to or change the Agreement in any manner.

After Martinez was discharged from his employment, the Union filed a grievance report requesting the following relief:

The Union asks the Company to give P. Martinez another chance and to reinstate him back to work without loss of previous seniority as soon as deemed possible. (Transcript of Arbitration Hearing, Exhibit II.)

Because the dispute was not resolved after the third step in the grievance process, the parties invoked the fourth step by submitting the matter to arbitration. On July 14, 1977, an arbitration hearing was held before Sherwood Malamud. The arbitrator was appointed by the Wisconsin Employment Relations Commission pursuant to the procedures outlined in the Agreement.

The parties stipulated to the issue that was presented to the arbitrator: Did the party violate the contract by discharging grievant? (Transcript of Arbitration Hearing p. 2.) The parties also stipulated to the receipt in evidence of two exhibits: Exhibit 1, which is the collective bargaining agreement between the Company and the Union; and exhibit 2, the grievance in this case. The Union made a closing argument at the end of the hearing and the Company submitted a written brief to the arbitrator on September 22, 1977.

In his closing argument at the hearing, the Union's attorney argued that Mr. Martinez should be reinstated with full backpay for all of the time that he was off work. (Transcript of Arbitration Hearing, p. 92.) The Company did not object to this request.

On March 6, 1978, the arbitrator issued his decision and found that the Company violated the Agreement when it discharged Mr. Martinez. The Company was ordered to reinstate Mr. Martinez "with full backpay and benefits from the date of discharge to the date an offer of reinstatement is made to grievant by the Company, Peter Cooper Corporations, less any income which grievant would not have received but for his discharge." (Complaint, Exhibit C, p. 5.)

The Company has reinstated Mr. Martinez but has refused to comply with the other provisions of the arbitration award.

In support of its motion, the Company argues that the arbitrator went beyond the scope of his authority under the Agreement and the scope of the issue presented to him by awarding backpay and benefits to Mr. Martinez. The Company argues that it never submitted the issue of the appropriate remedy to the arbitrator for resolution. The plaintiff, therefore, requests that this Court vacate the portion of the arbitration award which orders that backpay and benefits be paid to Mr. Martinez.

In support of its motion for summary judgment, the Union states that the award of reinstatement with backpay was within the arbitrator's authority and should be affirmed. The Union also requests that the Court order that interest on the backpay be paid the employee and that reasonable attorney's fees be awarded to the plaintiff.

■ Basically, a court has power to review and set aside a labor arbitration award only if the grievance is not arbitrable, if the decision of the arbitrator is arbitrary or capricious, or if the arbitrator exceeds his contractual authority. *Meat & Allied Food Workers v. Packerland Packing Co.,* 411 F.Supp. 1280 (E.D.Wis.1976).

■ The Court's function is to ascertain whether the party seeking arbitration is making a claim which on its face is governed by the contract. The Court should

not weigh the merits of the grievance. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). This is in keeping with the federal policy of settling disputes by arbitration.

The Supreme Court set forth the approach to utilize in resolving disputes arising under labor contracts containing arbitration clauses in the Steelworkers Trilogy: *United Steelworkers of America v. American Manufacturing Co., supra; United Steelworkers of America v. Warrior & Gulf Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) and *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 124 (1960). *In Enterprise*, the court delineated the guidelines for arbitration:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. 363 U.S. at 597, 80 S.Ct. at 1361.

The court delineated the scope of judicial review of an arbitrator's decision and emphasized that the collective bargaining agreement is a question for the arbitrator. The court stated:

> It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their inter-

pretation of the contract is different from his. *Id.* at 599, 80 S.Ct. at 1362. Thus, a reviewing court should not disturb the award so long as the arbitrator's interpretation was not arbitrary. *Mogge v. District 8, International Association of Machinists, AFL–CIO*, 454 F.2d 510 (7th Cir. 1971).

It is well-established that broad construction should be given to the arbitration clause of a collective bargaining agreement. *United Steelworkers of America v. Warrior & Gulf Co., supra.* As to the scope and breadth to be accorded the arbitration clause, the intention to exclude a particular matter from arbitration must be clearly expressed. *Id.*

The problem in this case is that plaintiff argues that the parties limited the issue for arbitration by means of the submission statement. Thus, when the arbitrator addressed the issue of remedies, he allegedly went beyond the terms of his authority.

After careful consideration and analysis of relevant case law, the Court finds that it is not persuaded by plaintiff's argument.

First of all, the arbitration hearing is part of the grievance procedure set forth in the collective bargaining agreement between the parties. The processing of disputes through the grievance machinery is the means by which meaning and content are given to the collective bargaining agreement. As the court said in *Warrior & Gulf Co.*:

> Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. *Id.*, 363 U.S. at 581, 80 S.Ct. at 1352.

Thus the argument that the submission statement limit the issues seems unreasonable when the entire purpose of the submission was to further the intent of the collective bargaining agreement. The submission statement must be examined in light of the terms of the underlying agreement.

Secondly, plaintiff apparently does not dispute that backpay could be awarded under the contract. Rather plaintiff argues

that this arbitrator had no authority to do so in this particular proceeding. It seems to this Court that the whole purpose of labor arbitration would be frustrated if the substantive grievance were to be decided in one proceeding and the remedy, if appropriate, in another.

In addition, if the company's view were adopted, the grievant would suffer economic loss because the company would not have to reimburse him even though the arbitrator found that he was unjustly discharged.

■ Finally, the collective bargaining contains no provision as to remedies thereby leaving the arbitrator free to exercise his discretion. As the court stated in *Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777*, 398 F.2d 735, 738 (7th Cir. 1968):

> The award to backpay to a wrongfully discharged employee is obviously within the authority of an arbitrator. Arbitration would be meaningless if the arbitrator lacked the authority to redress the economic wrong inflicted on such an employee.

■ The Court's conclusion that the arbitrator was acting within the scope of his authority to award back wages where the issue was not expressly presented to him has support in existing case law. *See, e.g., International Union of Electrical, Radio & Machine Workers, AFL–CIO v. Peerless Pressed Metal Corporation*, 489 F.2d 768 (1st Cir. 1973); *Kroger Co. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 661*, 380 F.2d 728 (6th Cir. 1967). *Newark Wire Cloth Co. v. United Steelworkers of America*, 339 F.Supp. 1207 (D.N.J.1972).

Even in a case which took an opposite view, the court expressed its reluctance in holding that the arbitrator exceeded his authority. *Kansas City Luggage & Novelty Workers Union, Local 66 v. Neevel Manufacturing Co.*, 325 F.2d 992, 994 (8th Cir. 1964). *See also, Retail Store Employees Union, Local 782 v. Sav-On Groceries*, 508 F.2d 500 (10th Cir. 1975).

In light of the foregoing, the Court finds that the arbitrator did not exceed his au-

thority in awarding backpay to the grievant. Accordingly, defendant's motion for summary judgment on this issue is granted. Plaintiff's motion for summary judgment is denied.

■ Defendant's counsel requests that any decree affirming the arbitration award include a provision for an award of interest. After due consideration, interest at the rate of seven percent from the date of the arbitration award is to be granted. *Metal & Allied Food Workers v. Packerland Packaging Co., supra.*

■ Counsel for defendant have also requested an award of attorney's fees if they prevail. The Court has considered this request but finds that, in light of the complexity of the issue, the diverging positions, and the unsettled nature of caselaw decisions on this issue, the award of attorney's fees will be denied in this case.

SO ORDERED this 7th day of June, 1979, at Milwaukee, Wisconsin.